IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                               *
BYRON FRANKLIN,
                               *
          Plaintiff,
                               *
          v.                               CIVIL NO.: WDQ-14-2356
                               *
OFFICE OF BALTIMORE CITY
STATE'S ATTORNEY, et al.,                      *

          Defendants.              *

  *      *      *      *      *      *      *      *      *      *      *      *      *
```

MEMORANDUM OPINION

Byron Franklin sued the Office of the Baltimore City State's Attorney and others[1] for violating his civil rights under 42 U.S.C. § 1983 and Maryland state law claims.  Pending is the Defendants' motion to dismiss.[2]  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the following reasons, the motion will be granted.

---

[1] The other defendants are Gregg Bernstein, then State's Attorney of Baltimore City; Wes Corning, an Assistant State's Attorney; and Oana Brooks, an Assistant State's Attorney.  ECF No. 2 at 2-4.

[2] ECF No. 77.

I. Background[3]

On October 25, 2013, the Plaintiff's next-door neighbor, Matthew Clagett, began "ferociously banging" on the adjoining wall between his and the Plaintiff's apartments so that the Plaintiff would turn his music down. ECF No. 2 at ¶¶ 10-11. While banging on the wall, Clagett "aggressively yell[ed] the anathema epithet N*gger . . . ."[4] Id. at ¶ 11. After several minutes of banging and yelling, "Clagett left his apartment to then start banging aggressively on [the] Plaintiff['s] [] door." Id. at ¶ 12. The Plaintiff opened the door and stood "within his threshold." Id. at ¶ 13. Clagett "yell[ed] and scream[ed] more N*gger epithets and spit[] into [the] Plaintiff's face." Id.

The Plaintiff felt "threatened and in fear of imminent bodily injury due to Clagett being within the threshold of his doorway and committing a battery upon him with spit . . . ." ECF No. 2 at ¶ 13. The Plaintiff "pushed Clagett out of the threshold of his doorway." Id. "Clagett hit the floor, got

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] The Plaintiff alleges that Clagett has engaged in "similar conduct involving yelling racial slurs through the walls . . . intermittently for close to two years." ECF No. 2 at ¶ 12.

back up[,] and took a swing at [the] Plaintiff . . . ."  *Id.* at

¶ 14.  The Plaintiff "defended himself again, and the matter

was over."[5]  *Id.*  On October 26, 2013, the Plaintiff and

Clagett filed criminal assault and battery charges against

each other.  ECF No. 2 at ¶ 15.[6]

On December 6, 2013,[7] "Assistant State's Attorney Wes

Corning, with the approval of his supervisor, Assistant

State's Attorney, Oana Brooks . . . dismissed the charges

against Clagett . . . without providing any notice to

Plaintiff."[8]  ECF No. 2 at ¶ 16.  "[T]he true-test copy of the

District Court of Maryland court record . . . shows that []

Clagett's assault charge was disposed of by a nolle prosequi."

ECF No. 5-2 at 3 (citing ECF No. 5-3 at 2).  The Plaintiff

---

[5] In the complaint, the Plaintiff does not describe what
"defend[ing] himself again" entailed.  *See* ECF No. 2 at ¶ 14.
In his opposition to the motion to dismiss, the Plaintiff
asserts that "Clagett hit the floor, got back up, and struck at
[the Plaintiff], [the Plaintiff] blocked the strike, shut the
door, and the matter was over."  ECF No. 13-1 at 1.

[6] The complaints were filed as *State v. Matthew Clagett,*
5B02237681; and *State v. Byron Franklin,* 5B02237625.  ECF No. 2
at ¶ 15.

[7] The Plaintiff asserts that December 6, 2013 "was not the actual
scheduled trial date."  ECF No. 2 at ¶ 16.

[8] The Plaintiff alleges that the charges were dismissed
"secretly, intentionally, maliciously and/or with gross
negligence."  ECF No. 2 at ¶ 16.  Further, the Plaintiff asserts
that the Assistant State's Attorneys dismissed the case "with
the consent, condonation, ratification, authority, and/or
approval of State's Attorney Gregg L. Bernstein."  *Id.* at ¶ 33.

alleges that the dismissal violated Maryland's Victim's Rights Act, and was done "solely because Clagett is white and [the] Plaintiff is African American."   ECF No. 2 at ¶ 16.

Although the State dismissed the case against Clagett, it "maintained the prosecution of the assault charges against [the] Plaintiff . . . ."   ECF No. 2 at ¶ 18.   "[The] Plaintiff, [a] law professor, had no criminal convictions and Clagett, an arcade mechanic, had been previously convicted for assault, drug and paraphernalia possession, and [had] an initial peace order taken out against him . . . ."   *Id.* at ¶ 22.   When it dismissed the charges against Clagett, "the State was aware of Clagett's violent criminal history."   *Id.*

The Plaintiff refiled the charges against Clagett, but again, the State's Attorney's Office declined to prosecute.   ECF No. 2 at ¶¶ 19-20.   The Plaintiff met with Corning and Brooks "to inquire why his charges against Clagett were dismissed." *Id.* at ¶ 19.   During the meeting, the Plaintiff "protested the racial disparity in [his] treatment."   *Id.* at ¶ 20.   After the Plaintiff's mention of race, "Brooks[] became disinterested in his complaint."   *Id.*   The Plaintiff told Corning and Brooks that he was going to refile the charges, but--"told [him that] he was prohibited at that point from doing so."   *Id.*

On June 17, 2014, the Plaintiff sued the Defendants in the Circuit Court for Baltimore City alleging that Corning, Brooks,

4

and Bernstein "intentionally, maliciously, and/or with gross

negligence, violated Plaintiff's rights under [Maryland's

Victim's Rights Act], and thus the First and Fourteenth

Amendments of the U.S. Constitution by twice dismissing charges

of assault duly filed by the district court commissioner against

. . . Clagett, without first obtaining from [the] Plaintiff his

agreement to do so . . . solely because [the] Plaintiff was

African American and Clagett was white."  ECF No. 2 at ¶¶ 37-38.

The Plaintiff asserts that the State's Attorneys violated 42

U.S.C. § 1983 and the Maryland Declaration of Rights.  *See id.*

at ¶¶ 37-38, 45.  Further, the Plaintiff alleges that the Office

of the State's Attorney violated 42 U.S.C. § 1983 by having

> a policy, practice, and/or custom of selectively
> prosecuting African Americans who are charged with
> assaulting whites in cross-complaints filed by both
> the parties (African Americans against whites, vice
> versa), alleging the same conduct (arising out of
> the same facts), while dismissing on pre-trial
> motions (without notice or agreement), and thus
> declining to prosecute, whites charged with assaulting
> African Americans in the corresponding cross-
> complaints filed by African Americans, where the
> African Americans are victims.

ECF No. 2 at ¶ 93.

On July 24, 2014, the Defendants removed the case to

this Court.  ECF No. 1.  On July 25, 2014, the Defendants

moved to dismiss.  ECF No. 5.  On August 21, 2014, the

Plaintiff opposed the motion.  ECF No. 13.  On September 18,

2014, the Defendants replied.  ECF No. 26.

II. Analysis

A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action can be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

6

not only allege but also "show" that the plaintiff is entitled
to relief.  *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief."  *Id.* (internal quotation marks and alteration omitted).

  B. The Defendants' Motion to Dismiss

      1. Section 1983 Claims Against Corning, Brooks, and
         Bernstein

    In *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), the
Supreme Court held that prosecutors have absolute immunity when
taking prosecutorial actions that are "intimately associated
with the judicial phase of the criminal process."  Absolute
immunity is necessary because of the "concern that harassment by
unfounded litigation" could "cause a deflection of the
prosecutor's energies from his public duties" and "shade his
decisions instead of exercising the independence of judgment
required by his public trust."  *Id.*[9]  However, "[t]he Court made

_____

[9] *See also Dababnah v. Keller-Burnside*, 208 F.3d 467, 471 (4th
Cir. 2000) ("Absolute prosecutorial immunity 'is not grounded in
any special esteem for those who perform these functions, and
certainly not from a desire to shield abuses of office, but
because any lesser degree of immunity could impair the judicial
process itself.'  Failure to grant a prosecutor immunity for
actions taken in open court in pursuit of a court order would be
a portentous step.  We decline to discourage prosecutorial
resort to the judicial process in this manner.") (quoting *Kalina
v. Fletcher*, 522 U.S. 118, 127 (1997)) .

clear that absolute immunity may not apply when a prosecutor is
not acting as 'an officer of the court,' but is instead engaged
in other tasks, say, investigative or administrative tasks."
*Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).  The Court
has held that

> absolute immunity applies when a prosecutor prepares
> to initiate a judicial proceeding, or appears in court
> to present evidence in support of a search warrant
> application, . . . [but] does not apply when a
> prosecutor gives advice to police during a criminal
> investigation, when the prosecutor makes statements to
> the press, or when a prosecutor acts as a complaining
> witness in support of a warrant application.

*Id.* (citations omitted).

In *Springmen v. Williams*, 122 F.3d 211, 212 (4th Cir.
1997), the Fourth Circuit dismissed a § 1983 claim against an
Assistant State's Attorney "when she advised a police officer to
initiate prosecution [against the plaintiff] for reckless
endangerment."  The court reasoned that prosecutorial immunity
"protects decisions that are integrally related to the charging
process" and the suit "challenge[d] a prosecutor for an action
at the core of her responsibilities--*deciding whether to proceed
with a prosecution.*"  *Id.* at 212-13 ("It is difficult to imagine
conduct more intimately related to the judicial process than
a prosecutor's decision to proceed with a prosecution.").  The
Fourth Circuit "has repeatedly reaffirmed that a prosecutor is
entitled to absolute immunity for claims that rest on her

decisions regarding 'whether and when to prosecute.'" *Id*. at 313
(quoting *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir.1996)).

Even if the Court were to assume, for the sake of argument,
that Corning and Brooks had an improper motive in not
prosecuting Clagett's case, such a motivation would not affect
the prosecutorial immunity analysis.  "The focus of immunity
analysis, [] is 'on the *conduct* for which immunity is claimed,
not on the harm that the conduct may have caused or the question
whether it was lawful.'"  *Lyles v. Sparks*, 79 F.3d 372, 377 (4th
Cir. 1996) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 271
(1993) (denying a section 1983 claim which argued that the
prosecutor timed the indictment to deny the defendant his
counsel of choice).[10]  Absolute prosecutorial immunity reflects a
"balance" of "evils."  *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d
Cir. 1949) (*quoted in Van de Kamp*, 555 U.S.at 340).  "[I]t has
been thought in the end better to leave unredressed the wrongs
done by dishonest officers than to subject those who try to do
their duty to the constant dread of retaliation."  *Id*.

In this case, the attorneys' decision to *nolle prosequi* the
charges against Clagett was "at the core of [their] responsib-
ilities" because it related to "whether to proceed with a

---

[10] *See also Bernard v. Cnty. Of Suffolk*, 356 F.3d 495, 498 (2d
Cir. 2004) ("[A]s long as a prosecutor acts with colorable
authority, absolute immunity shields his performance of
advocative functions regardless of motivation.").

prosecution." *See Springmen*, 122 F.3d at 212-13.  However, the Plaintiff attempts to remove the absolute immunity by arguing that the Maryland Victim's Rights Act implied a mandatory duty to seek the Plaintiff's consent before dismissing the case; therefore, he argues, their actions were "ministerial."[11]  *See* ECF No. 13 at 5-10.

The Victim's Rights Act states that "[a] victim of assault has the rights provided under § 3-207 of the Criminal Law Article."  Md. Code Ann. Crim. Proc. § 11-201.  Section 3-207 addresses the "dismissal of [an] assault charge."  It states that "[o]n a pretrial motion of the State, *a court* may dismiss a charge of assault if: 1) the victim and the defendant agree to the dismissal; and 2) *the court* considers the dismissal proper."  Md. Code Ann. Crim. Law § 3-207(a) (emphasis added).

The statute addresses dismissals that require court approval and mandates the considerations the court should make. Here, the attorneys did not enter a dismissal that required court approval--*the charge was nolle prossed*.  In Maryland, "the broad discretionary right of a prosecutor to enter a *nolle prosequi*, and thereafter institute new charges based on the same facts is well established law."  *Mora v. State*, 720 A.2d 934,

---

[11] "A ministerial act is one in which the law prescribes and defines a duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment."  *Asare v. Ferro*, 999 F. Supp. 657, 659 n.6 (D. Md. 1998).

944 (Md. Ct. Spec. App. 1998).  "The entry of a nolle prosequi
is generally within the sole discretion of the prosecuting
attorney, *free from judicial control* . . . ."[12]  *Ward v. State*,
427 A.2d 1008, 1012 (Md. 1981) (emphasis added).  Based on the
plain wording of the statute, § 3-207 did not apply to Clagett's
case--the attorneys did not dismiss the charges on a pre-trial
motion requiring court approval or the determination of with or
without prejudice.[13]  Thus, the Plaintiff's consent was not
required.

   The prosecutors' actions are entitled to absolute
immunity.[14]  If the prosecutors did act improperly, "[t]he

---

[12] "Judicial oversight of such authority has been limited to two
types of instances.  The first is where the *nolle prosequi* was
entered after jeopardy had attached and under circumstances
where 'fundamental fairness' would be violated. . . .  The
second restraint on an entry of a *nolle prosequi* is when it is
entered with the purpose of circumventing speedy trial
requirements."  *Mora*, 720 A.2d at 945.

[13] The Plaintiff argues that allowing prosecutors to dismiss
cases *nolle prosequi* without being bound by § 3-201 would
circumvent the purpose of the Victim's Rights Act.  *See* ECF No.
13-1 at 8-16.  The Court, however, is bound by the plain wording
of the statute.  If the Maryland General Assembly wishes to
provide greater protections it may do so.
   Further, as the Defendants argue, cases have come before
the Court of Appeals of Maryland in which the prosecutor *nolle
prossed* an assault charge without the victim's consent, and the
court did not comment that this action violated the victim's
rights.  *See Calloway v. State*, 414 Md. 616, 619 (2010);
*Attorney Grievance Comm'n v. Muhammad*, 395 Md. 676, 689 (2006);
*In re Darren M.*, 358 Md. 104, 107 (2000).

[14] The Plaintiff provided other reasons that absolute immunity
would not apply; however, these arguments were dependent on the

primary check on prosecutors . . . lies in the judicial process, not in section 1983 suits." *Springmen*, 122 F.3d at 214.

To the extent that the Plaintiff was attempting to make a claim for selective prosecution,[15] "[t]o establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Olvis*, 97 F.3d 739, 741-42 (4th Cir. 1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  This requires the defendant to establish (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith.  *Id.* (quotations omitted).

---

applicability of § 3-201 to Clagett's case.  *See* ECF No. 13-1 at 9-27.  Because the Court determined that the statute does not apply, it will not address these arguments.
    Further, in the complaint, the Plaintiff also states that the Defendants violated § 1983 because they refused to prosecute Clagett in violation of the Plaintiff's First Amendment rights. *See* ECF No. 2 at ¶ 35.  "The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.  These are discretionary public duties that are enforced by public opinion, policy, and the ballot."  *Doe v. Mayor & Cty. Council of Pocomoke Cty.*, 745 F. Supp. 1137, 1139 (D. Md. 1990).

[15] The complaint is not entirely clear.  All of the claims against the attorneys seem to be based on the Plaintiff's assertion that they did not consult him prior to dismissing the assault charges and that they violated his rights as a victim. However, in some parts of the complaint, the Plaintiff states that he was prosecuted while Clagett was not based on race. *See, e.g.*, ECF No. 2 at ¶ 45.

To survive a motion to dismiss and "obtain discovery," a defendant must produce 'some evidence' making a 'credible showing' of discriminatory effect and discriminatory intent. *Id.* (quoting *United States v. Armstrong,* 517 U.S. 456, 469 (1996)). "Just as the standard for ultimately proving a selective prosecution claim is a rigorous one, so too is the evidentiary threshold for obtaining discovery from the government to support such a claim."[16]  *Id.*

Here, the Plaintiff has not carried his burden.  The only evidence in the complaint that supports an assertion of bad faith are the Plaintiff's recitations of three cases in which the Baltimore City State's Attorney dismissed an assault charge against a white person while continuing to prosecute the related complaint of an African American.[17]  *See* ECF No. 2 at 30-31.  In *United States v. Olvis*, 97 F.3d 739, 745 (4th Cir. 1996), the Fourth Circuit found that a much more comprehensive "informal

---

[16] "A significant barrier to discovery is necessary because discovery imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution; it diverts governmental resources and discloses prosecutorial strategies.  Thus, the Supreme Court recently admonished in *Armstrong,* the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims."  *Olvis*, 97 F.3d at 743 (citations and quotations omitted).

[17] The Plaintiff included this information in his claim against the Office for a "policy, practice, or custom;" it was not included in the part of the complaint addressing the prosecutors individually.

statistical study" "did not constitute some evidence tending to show the existence of the essential elements of a selective-prosecution claim." *Id.* (quotations omitted).  The prosecutors in these three cases may have made their decisions for a multitude of reasons unrelated to race.[18]  Offering these three cases[19] does not fulfill the rigorous requirements of a selective prosecution claim.

> 2. Maryland Law Claims Against Corning, Brooks, and Bernstein

In *Gill v. Ripley*, 724 A.2d 88, 90-97, 101 (Md. 1999), the Court of Appeals of Maryland analyzed whether absolute prosecutorial immunity existed under state law.  The court adopted the Supreme Court's reasoning in *Imbler* and found that absolute immunity protected a prosecutor who dismissed a child paternity suit without the permission and consent of the mother. *Id.* at 95-96, 101-102.  The court reasoned that

---

[18] "Prosecutorial decisions may also be legitimately influenced by such factors as the strength of the evidence against a particular defendant, the defendant's role in the crime, whether the defendant is being prosecuted by state authorities, the defendant's candor and willingness to plead guilty, the amount of resources required to convict a defendant, the extent of prosecutorial resources, the potential impact of a prosecution on related investigations and prosecutions, and prosecutorial priorities for addressing specific types of illegal conduct." *Olvis*, 97 F.3d at 744.

[19] The Plaintiff has made no effort to provide the Court with the number of instances in which prosecutors dismissed a case against an African American while pursuing the case against a white person.

[t]here can be little doubt from the principles discussed above that the decision to terminate a prosecution, with or without prejudice, is a quasi-judicial function and, at least in a criminal context, is therefore within the ambit of absolute prosecutorial immunity. Whether that decision is right, wrong, malicious, or non-malicious, it necessarily is part of the prosecution process and stands on the same footing as a decision whether to commence a particular prosecution, whether to charge one offense rather than another, what evidence to produce, and what arguments to make. All are part of the judicial process that serves as the essential underpinning of prosecutorial immunity.

*Id.* at 98.

Accordingly, the prosecutors in this case are entitled to absolute immunity under the state law claims for the same reason that the § 1983 claims must be dismissed.[20]

3. Claims Against the Office of the State's Attorney

The Baltimore City Office of the State's Attorney is a representative of the state not a municipality. *See Johnson v. Balt. Cnty., Md.*, No. 11-cv-3616, 2012 U.S. Dist. LEXIS 92154, *52-53 (D. Md. July 3, 2012). Accordingly, the Office is not a "person" within the meaning of § 1983, and the Court will grant the motion to dismiss those claims. *See Hamlett v. Balt. Cty.*

---

[20] To the extent that the complaint attempts to state a state law claim against the Office of the State's Attorney, those claims will also be dismissed. Under the Maryland Tort Claims Act, the waiver of governmental immunity "differs according to the type of immunity available to the public servant whose action gave rise to the civil claim." *Parker v. State*, 653 A.2d 436, 438-39 (Md. 1995).

*Cir. Ct.*, No. CCB-13-1203, 2013 U.S. Dist. LEXIS 72984, *1, *3-4 (D. Md. May 22, 2013).

III. Conclusion

For the reasons stated above, the Defendants' motion will be granted.

2/24/15

Date

William D. Quarles, Jr.
United States District Judge

16